Anthony G. BRIDGEFORD, Appellant,

v.

UNITED STATES, Appellee.

No. 13585.

District of Columbia Court of Appeals.

Argued Nov. 15, 1979.

Decided Feb. 7, 1980.

---

**634**

Michael J. McCarthy, Washington, D. C., appointed by this court for appellant.

Norman M. Monhait, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry, Michael W. Farrell, and Richard H. Saltsman, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KERN, NEBEKER and HARRIS, Associate Judges.

KERN, Associate Judge:

A jury convicted appellant of armed robbery, assault with intent to kill while armed, armed mayhem, and carrying a pistol without a license,* upon testimony that in January 1977 he shot, seriously wounded, and then robbed the complainant while they were both riding in an auto owned and driven by one Singley. The bullet, fired point-blank by appellant who was sitting in the front seat at the complainant in the back seat, entered the victim's throat and struck his spinal cord, causing instant and permanent paralysis of the lower part of his body. Appellant challenges the convictions on various grounds, only three of which require discussion.[1]

■ First, appellant complains that the trial court erred in refusing to grant his request that Singley, the key defense witness at trial, be permitted to review before trial his previous testimony to the grand jury. The prosecutor read portions of this grand jury testimony to appellant's counsel during a trial recess before Singley took the stand. The prosecutor then confronted Singley on cross-examination with certain differences between his testimony on direct examination and parts of the grand jury testimony that had not been read to defense counsel.

We are not persuaded that the court's ruling was prejudicial under the circumstances even if we assume solely for the purpose of determining this appeal that the eight months between the time Singley testified to the grand jury and the date of trial required a refreshment of his recollection and, therefore, constituted a "particularized need" for his grand jury testimony under the applicable rule, Super.Ct.Cr.R. 6(e). See *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959). The discrepancies between his direct testimony and grand jury testimony about which the prosecutor on cross-examination asked the witness Singley were minor. The differences went to the location of the victim in the car and when the victim spoke after entering the car, and paled into insignificance when compared with the other evidence presented at trial to impeach his testimony. Specifically, Singley was impeached with both his prior criminal convictions and a statement he had made to the police on the night of the crime in which he *agreed with* the victim's version of the incident. In addition, a physician testified that the injury inflicted by the bullet would have paralyzed the victim instantly, thereby making it physically impossible for him to have gotten into Singley's car *after* being shot and robbed, which was the theory of the defense appellant asserted at trial.[2]

■ Appellant's second contention is that his constitutional right to a speedy trial was violated because 14 months elapsed between

---

* D.C.Code 1973, § 22–3202 and § 22–2901, –501, –506, and –3204, respectively.

1. We reject as without merit the contentions that the trial court erred in (1) denying appellant's motion to declare a mistrial because the prosecutor, during closing argument, made prejudicial remarks to the jury, (2) denying appellant's motion for judgment of acquittal for insufficiency of the prosecution evidence, and (3) imposing the particular sentences for the various convictions.

2. Appellant points to the importance of Singley's testimony in that he corroborated appellant's account of the incident, *viz*, that the victim entered his car *subsequent to* being robbed and shot by others unknown.

the arrest and his trial. The trial court carefully applied the criteria set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in denying his motion to dismiss on this ground. We note that the trial was scheduled for October 12, 1977, some seven months after arrest, and there is no indication of any unusual matter occurring during this initial period of time. The trial, however, was rescheduled from October 1977 to January 1978 because of difficulties in obtaining the presence of the defense witness Singley, and the heavy schedules of the court and prosecutor. A postponement of the January date was necessary because an administrative error chargeable to the government delayed the transport to court of this key witness for the defense. A further delay from March to April 1978 was necessitated by the respective schedules of the court and defense counsel. However regrettable these postponements from October 1977 to April 1978 may be, they do not indicate a deliberate delay for tactical advantage to the government or a callous disregard by the governmental of appellant's right to a speedy trial.

The record also demonstrates the absence of any prejudice to the defense from the delay.[3] Neither appellant, who did not even assert his right until January 1978, nor the defense witness, Singley, indicate that their memory had been impaired by reason of the passage of time between the arrest and the trial; and Singley's testimony corroborated in all major respects appellant's version of the incident.

■ Appellant's final contention (Brief at 9), is that the "doctrine of merger applies . . . to the . . . count charging Assault With Intent to Kill While Armed and the . . . count charging Mayhem While Armed [because] . . . [t]hose offenses arose from a single occurrence."

Although there was but one shooting in the instant case, we are not persuaded a merger of these offenses occurred since the elements of proof of the two crimes charged are different,[4] and the statutes proscribing the crimes, i. e., D.C.Code 1973, §§ 22–501 and –506, protect different societal interests. *See McFadden v. United States*, D.C. App., 395 A.2d 14 (1978). Nor does the instant case fall within the ambit of *Robinson v. United States*, D.C.App., 388 A.2d 1210 (1978), where we recognized "that some type of seizure, detention or confinement is an integral part of every rape" and we concluded "it unlikely that Congress intended that every person who commits a rape be also charged and convicted of kidnapping." *Id.* at 1211. Permanent disabling of the victim is *not* an integral part of every assault with intent to kill and hence we see no congressional prohibition against the particular charges brought against appellant here.

*Affirmed.*

3. Appellant's imprisonment while awaiting trial in the instant case was equally due to the pendency of a criminal charge in another case. Thus, the delay herein did not result in excessive pretrial incarceration. *See Barker v. Wingo, supra.*

4. The elements of the assault count are a specific intent by the defendant to kill the victim and an assault by him on the victim; the ele-

ments of mayhem are only a general intent by the defendant to do the act, albeit maliciously and willfully, and a permanent injury suffered by the victim as the result of the defendant's action. *United States v. Cook*, 149 U.S.App. D.C. 197, 462 F.2d 301 (1972); *Brown v. United States*, 84 U.S.App.D.C. 222, 171 F.2d 832 (1949).