John R. ROUSE, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 13598.

District of Columbia Court of Appeals.

Argued April 26, 1979.

Decided May 23, 1979.

Paul D. Warring, Washington, D.C., appointed by the court, for appellant.

Richard W. Goldman, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry and Larry G. Whitney, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY, GALLAGHER, and FERREN, Associate Judges.

FERREN, Associate Judge:

A jury convicted appellant of armed robbery, D.C.Code 1973, §§ 22–2901, –3202, assault with a dangerous weapon, D.C.Code 1973, § 22–502, and carrying a pistol without a license, D.C.Code 1973, § 22–3204.[1] His two principal contentions on appeal are that (1) the trial court erred in refusing to give a jury instruction for larceny as a lesser-included offense of robbery, and that (2) the offense of carrying a pistol without a license merges into armed robbery. We affirm.

I.

On September 2, 1977, James Clay, a United Parcel Service driver, was sorting packages in his deliver truck in the 1200 block of S Street, S.E. Clay testified that when he walked to the front of his truck, he

1. Appellant also was indicted for robbery, a lesser included offense of armed robbery.

saw a man, whom he later identified as appellant, sitting on the sidewalk approximately five feet away with a bag in his hand. Clay said, "Hey, how are you doing?" Appellant replied, "What do you think is going on?" At that time Clay "knew it was trouble." He took his wallet out of his pocket and threw it among the boxes in the truck. He went out the back door of his truck and closed it. Then, while walking past appellant, he called out to a fictitious person to try to "distract" appellant. Clay testified that he was trying to get into the driver's seat to get away, but as he sat down to start the truck appellant came up to him, holding a bag with a gun in it, and said, "All right, Goddamnit, this is a holdup." Clay jumped out of the truck and ran across the field. He testified that as he was ducking, dodging, and running away, appellant fired the gun at him. Clay yelled twice to a man in a nearby mechanics shop to call the police. Clay then circled back, ducked between some parked cars, and ran into a used car office across the street from his truck. From there he called the police.

Peggy Brown, who worked in the office, testified that she had seen a man (Clay) run across the field, and that she "had heard something like gunshots." While Clay and Brown waited for the police, they watched appellant remove packages from the truck and drop them over a nearby embankment for approximately five minutes.

When police officers Hill and Crump arrived, Clay accompanied them in their cruiser to look for the man who had accosted him and taken the packages. After a few minutes, the officers parked their car and went inside a nearby apartment building at 1301 Ridge Place, N.W. Officer Crump testified that on exiting into the alley, he saw a man, later identified as appellant, walking without a shirt. Crump called to him and asked what he was doing there. Appellant said he was looking for a friend. Appellant, however, could not state either the name or the apartment number of his friend. Crump asked appellant to accompany him to the front of the building because

he wanted a gentleman to take a look at him. Appellant complied. According to Officer Crump, Clay then said, "[T]hat's the man, that's him, I'd know him anywhere, I'll never forget him."

Officer Crump arrested appellant and advised him of his rights. One of the witnesses had told Crump that appellant had been wearing a brown and white striped body shirt, so the officer went back into the apartment building, where he found such a shirt in the boiler room. At trial, appellant tried on the shirt in the courtroom. It fit. The government also submitted into evidence an official certificate stating that appellant was not licensed to carry a pistol in the District of Columbia. Neither the gun nor the packages from the truck, however, were recovered.

The defense called James Capias as an alibi witness. He testified that on that morning of September 2, 1977, he and appellant had played basketball, eaten lunch, and visited the apartment building at 1301 Ridge Place, N.W. to buy some marijuana. He further testified that appellant had remained outside while Capias went in to make the purchase. When he came back outside, Capias said, he saw police officers talking to appellant, so Capias walked away, fearing arrest for the marijuana.

On April 19, 1978, the jury convicted appellant on three of the four charges. See text at note 1 supra. On June 9, 1978, the court sentenced him to concurrent prison terms of 12 to 45 years for armed robbery, 3 to 10 years for assault with a dangerous weapon, and one year for carrying a pistol without a license. (The sentences, however, were to be consecutive to any other sentence previously imposed.)

## II.

Appellant contends that the trial court erred in giving the jury instructions on robbery and armed robbery without also giving an instruction on the lesser offense of larceny.

██ A defendant is entitled to a lesser-included offense instruction when (1) all elements of the lesser offense are included within the offense charged, and (2) there is a sufficient evidentiary basis for the lesser charge. *Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); *Day v. United States*, D.C.App., 390 A.2d 957, 961–63 (1978). Appellant and the government agree that robbery is an aggravated form of larceny, *Edwards v. United States*, 78 U.S.App.D.C. 226, 229, 139 F.2d 365, 368 (1943) *cert. denied*, 321 U.S. 769, 64 S.Ct. 523, 88 L.Ed. 1064 (1944); thus, appellant meets the first requirement.

██ As to the second requirement, appellant contends that because the packages were removed from the truck after Clay, the victim, had fled, the evidence was sufficient to support the theory that appellant was guilty, at most, of larceny, a crime against possession, *see Groomes v. United States*, D.C.Mun.App., 155 A.2d 73, 75 (1959), in contrast with robbery, a crime against possession by a person, *see (Steven) Jones v. United States*, D.C.App., 362 A.2d 718, 719 (1976). That is to say, the jury could find that Clay had not been in "immediate actual possession" of the property at the time of the taking, as required for conviction of robbery or armed robbery.[2]

It is helpful to note, first, why the robbery instruction itself was proper. Under D.C.Code 1973, § 22–2901, if the actions of the accused ("putting in fear" and/or "force or violence") are responsible for depriving the victim of immediate actual possession, then the jury can properly find the accused guilty of robbery or armed robbery, as the case may be. The crime is not limited to larceny simply because the accused had confronted the victim and frightened him into fleeing before the property was taken.

[A] thing is within one's 'immediate actual possession' so long as it is within such range that he could, if not deterred by violence or fear, retain actual physical control over it. That construction is harmonious with holdings elsewhere that the invasion of personal possession essential to robbery sufficiently appears where the property is so far under the personal protection of the victim that violence or intimidation in necessary to sever his control. [*United States v. Dixon*, 152 U.S. App.D.C. 200, 204, 469 F.2d 940, 944 (1972)].

*See Spencer v. United States*, 73 U.S.App. D.C. 98, 116 F.2d 801 (1940). *Accord, State v. Glymph*, 222 Kan. 73, 74–75, 563 P.2d 422, 424 (1977); *People v. Moore*, 13 Mich.App. 320, 323, 164 N.W.2d 423, 425 (1969). The trial court instructed the jury accordingly.[3] That instruction was proper.

██ The question then becomes whether there was a "sufficient evidentiary basis" for the requested larceny instruct. *Day, supra* 390 A.2d at 961. A trial court should give a lesser-included offense instruction if proof of the greater offense charged will require the jury to find a disputed fact that need not be found to prove the lesser offense. *Id.* at 962. Thus, the question, on

2. The robbery statute, D.C.Code 1973, § 22–2901, which also underlies a charge of armed robbery, *see* text at note 1 *supra* provides:
    Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or *immediate actual possession* of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than two years nor more than fifteen years. [Emphasis added.]

3. The trial court told the jury:
    It's up to you to determine whether, when Mr. Clay was inside that truck, he had immediate, actual possession of the parcels as I have described them, as I have described immediate, actual possession for you.
    A person who after using force, or threat of force upon or against another with intent to commit robbery, thereby threatening him into running away [from] actual possession, and who then proceeds to take the property so left behind, has in the view of law, taken the property from the immediate, actual possession of his victim.
    In other words, a taking from the immediate, actual possession of a person occurs if violence or the threat of violence is necessary to separate that person from the physical control over his person [property].

this record, is whether there is a disputed fact warranting a lesser, larceny charge.

■ The evidentiary requirement is minimal—" 'any evidence' . . . however weak." *Belton v. United States*, 127 U.S. App.D.C. 201, 206, 382 F.2d 150, 155 (1967). A defendant has the burden of pointing out evidence in the government's case, or in his own, supporting his theory justifying a lesser charge. If he does so, the court must give a lesser-included offense instruction. If he does not, the court must deny the requested instruction, since there is no factual dispute and a finding contrary to the only evidence on the issue would be irrational. *Day, supra* 390 A.2d at 962; *United States v. Comer*, 137 U.S.App.D.C. 214, 219, 421 F.2d 1149, 1154 (1970).

■ Here, appellant argues that there is a factual dispute as to whether the packages where taken from the "immediate actual possession" of Clay; he says the evidence supports an argument that Clay made a "hasty exit," without fear of force or violence, before the theft took place. We disagree. We do not find " 'any evidence' . . . however weak" that would support a jury finding that Clay had not been in immediate actual possession of the property or that the severance of his control over the property had not been caused by appellant's threats of force or violence. Appellant presented an alibi defense. He showed no evidence in the government's case, nor did he introduce evidence of his own, which would contradict the testimony about the assailant's threats with the gun causing Clay to flee and yield possession of the property. A jury's conclusion that Clay had not been in immediate actual possession, would be irrational. *Day, supra; United States v. Comer, supra*. Appellant, therefore, was not entitled to an instruction on larceny as a lesser-included offense of robbery.

4. This conclusion reflects the separate societal interests served by the two statutes. D.C.Code 1973, §§ 22-2901, -3202 (armed robbery) is intended for protection against theft of property from the person, aided by force or violence or by fear caused by the threat of it. D.C.Code

III.

■ Appellant argues that the offense of carrying a pistol without a license merges into that of armed robbery, because the armed element of both crimes occurs simultaneously, and the same societal interests are served by this element of the two statutes. We do not agree.

According to the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not. [Citation omitted].

*See (Carl E.) Jones v. United States*, D.C. App., 401 A.2d 473 at 475 (1979); *Cooke v. United States*, D.C.App., 213 A.2d 508, 509–10 (1965).

Armed robbery, D.C.Code 1973, §§ 22-2901, -3202, presupposes a crime of violence for which a dangerous or deadly weapon is available—for example, a knife, razor, gun, or other instrument, but not necessarily an operable and unlicensed pistol. *See (George) Washington v. United States*, D.C. App., 366 A.2d 457, 461 (1976) (possession of a prohibited weapon, D.C.Code 1973, § 22-3214(b) not a lesser included offense of armed robbery). On the other hand, carrying a pistol without a license, D.C.Code 1973, § 22-3204, presupposes an operable and unlicensed pistol outside one's own premises or place of business, but not proof that the pistol was used in a robbery or, for that matter, in any other crime. *See Anderson v. United States*, D.C.App., 326 A.2d 807, 811–812 (1974), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975). Thus, "each provision requires proof of a fact that the other does not." *Blockburger, supra* 284 U.S. at 304, 52 S.Ct. at 182. There is no merger.[4]

1973, § 22-3204 (carrying a pistol without a license) is intended "drastically to limit the possession of guns in the District of Columbia." (citation omitted). *Berkley v. United States*, D.C.App., 370 A.2d 1331, 1333 (1977).

## 1222

### IV.

Finding no error, we affirm appellant's three convictions.[5]

*Affirmed.*

---

**5.** Appellant's other contentions have no merit. Appellant claims that the evidence was insufficient to support his three convictions. We disagree. There was evidence sufficient for a reasonable juror to find beyond a reasonable doubt that appellant, by threat of force, while armed, took property from the immediate actual possession of Mr. Clay (armed robbery), that after the robbery appellant fired a gun at Clay (assault with a dangerous weapon), and that appellant's gun was unlicensed (carrying a pistol without a license). The fact that the gun and the stolen packages were not recovered and put into evidence does not raise a reasonable doubt as a matter of law. *United States v. Curtis*, 138 U.S.App.D.C. 360, 363, 427 F.2d 630, 633 (1970) (en banc). *See (Samuel) Washington v. United States*, D.C.App., 397 A.2d 946 (1979).

Appellant also claims, without merit, that the trial court erred in reinstructing the jury and directing it to resume deliberations after juror number four, during a poll, stated her disagreement with the verdict on the armed robbery count. *Compare Lewis v. United States*, D.C. App., 393 A.2d 109, 113 (1978) *and Crowder v. United States*, D.C.App., 383 A.2d 336, 343 n. 14 (1978) *with Crowder, supra* at 340–43 *and Jackson v. United States*, D.C.App., 368 A.2d 1140 (1977) *and Kendall v. United States*, D.C. App., 349 A.2d 464 (1975).

Finally, the trial court did not abuse its discretion in commenting on the evidence in the case. *See Hall v. United States*, D.C.App., 383 A.2d 1086, 1088–89 (1978); *Watkins v. United States*, D.C.App., 379 A.2d 703 (1977).